IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QUINCY K. BERRY, : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 23-CV-0107 |
| : | |
| R. SELLERS, *et al.*, : | |
|     Defendants. : | |

<u>MEMORANDUM</u>

**SURRICK, J.**                                                                                                                                               **MARCH 27 , 2023**

      Plaintiff Quincy K. Berry brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Berry seeks leave to proceed *in forma pauperis*.  Because it appears that Berry cannot afford to pay the filing fee, the Court will grant him leave to proceed *in forma pauperis*.  For the following reasons, the Court will dismiss his Complaint in part with prejudice and in part without prejudice.  Berry will be given an opportunity to cure the noted deficiencies by filing an amended complaint.

**I.**        **FACTUAL ALLEGATIONS**

      Berry brings this civil action against the following Philadelphia Police officers:[1] (1) R. Sellers (identified in the Complaint as a Detective, Badge No. 7613); (2) Brett M. Werner

---

[1] Although the 35th Police Department is noted in the caption of Berry's Complaint (*see* Compl. at 1), it is not specifically identified as a Defendant in the portion of the form complaint where Berry listed all of the named defendants.  (*Id.* at 2-3.)  To the extent Berry sought to name the 35th Police Department as a Defendant, it would not be a proper entity subject to suit under § 1983.  A police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions.  *See e.g., Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993).  Thus, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not.  *Id.*; *Martin v. Red Lion Police Dept.*, 146 F. App'x 558, 562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality).

(identified as the "arresting officer"); and (3) Kevin Bradley (Badge No. 699). (Compl. (ECF No. 1) at 2-3.)[2] Berry also identifies the Keefe Commissary Company, located in St. Louis, Missouri, as a Defendant. (*Id.* at 3.) All Defendants are sued in their individual and official capacities. (*Id.* at 2-3.)

Berry's allegations are sparse. Berry claims that his Eighth and Fourteenth Amendment rights[3] have been violated because he "was treated inadequately while wrongfully incarcerated." (*Id.* at 4.) Berry avers that on January 15, 2018, Officer Werner arrested and charged him with a crime of which he was later acquitted. (*Id.* at 5.) Berry does not identify the crime charged, nor does he provide the date of acquittal. Berry also asserts that on August 20, 2019, Detective Sellers and Officer Bradley visited him at the Curran-Fromhold Correctional Facility ("CFCF") to have Berry sign off on a warrant to obtain his DNA. (*Id.*) Berry alleges that his mouth was swabbed in connection with the "crime that [he] was acquitted of." (*Id.*) Berry also avers that "[a]s of March 28th, 2020, [he] contracted the [COVID]-19 Virus which caused [him] to be transferred" to the Alternative & Special Detention Center ("ASD") until April 11, 2020. (*Id.* at

---

Furthermore, agencies of the City of Philadelphia, such as the Philadelphia Police Department, do not have a separate legal existence from the City. *See Vurimindi v. City of Philadelphia*, No. 10-88, 2010 WL 3169610, at *1 (E.D. Pa. Aug. 10, 2010) (observing that under 53 Pa. Cons. Stat. § 16257, "no such department shall be taken to have had . . . a separate corporate existence, and hereafter all suits growing out of their transaction . . . shall be in the name of the City of Philadelphia"); *Bush v. City of Philadelphia Police Dep't*, 684 F. Supp. 2d 634, 636 (E.D. Pa. 2010) (dismissing the Philadelphia Police Department as a matter of law because it is not a legal entity separate from the City of Philadelphia). Accordingly, to the extent Berry seeks to assert any claims against the 35th Police Department, the Court will dismiss those claims with prejudice because they are not plausible.

[2] The Court adopts the pagination assigned to the Complaint by the CM/ECF system.

[3] Berry references both cruel and unusual punishment and deliberate indifference under the Eight Amendment and due process under the Fourteenth Amendment. (*Id.* at 4.)

2

6.) Berry asserts that he was transferred to ASD "without the necessary hygiene products that [were] purchased through commissary before being transferred." (*Id.*)

Berry avers that he was "wrongfully incarcerated," and the incarceration caused him "to be infected with [COVID]-19." (*Id.* at 4.) Berry seeks millions of dollars in damages. (*Id.* at 6.)

## II.    STANDARD OF REVIEW

The Court will grant Berry leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, the Complaint fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory statements and naked assertions will not suffice. *Id*.

"At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). As Berry is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

### III.   DISCUSSION

As noted above, the Complaint reflects Berry's intention to raise civil rights claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought against state actors in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a §1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998); *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)).

### A.   Claims Against the Keefe Commissary Company

Berry names the Keefe Commissary Company ("Keefe") as a Defendant in this action but presents no factual allegations against it anywhere in the body of the Complaint. In other words, Berry has not alleged what Keefe did, or did not do, to violate his constitutional rights. To the extent Berry seeks to present a claim against Keefe, he has not alleged sufficient facts to proceed against it at this time. Moreover, Berry has not made any assertions as to whether Keefe is a state actor subject to liability under § 1983.[4] According to Keefe's website, it is a private

---

[4] Whether a private entity is acting under color of state law – *i.e.*, whether the defendant is a state actor subject to liability under § 1983 – depends on whether there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the United States Court of Appeals for the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are

corporation and supplier of food products and commissary goods to prisons across the nation. *See* Keefe Group, https://www.keefegroup.com/ (last visited March 22, 2023). Several courts have concluded that vendors such as Keefe, who sell products to prisoners, are not acting under color of state law. *See Davis v. Brown*, No. 21-171, 2022 WL 4714913, at *5 (W.D. Mich. Oct. 3, 2022) (citing *Kyles v. Keefe Commissary Network, LLC*, No. 14-11907, 2015 WL 1637466, at *6 (E.D. Mich. Apr. 13, 2015) ("[N]umerous federal courts have found that corporations involved in [supplying products to a department of corrections or selling products directly to prisoners] did not act under color of state law."); *LaPlante v. Lovelace,* No. 13-32, 2013 WL 5572908, at *12 (W.D. Mich. Oct. 9, 2013) (finding no evidence that Keefe Supply Company acted under color of state law by selling products to a prison commissary, because its conduct could not be "fairly attributed to the state"); *Smith v. Ozmint,* No. 07-3644, 2009 WL 692828, at *4 (D.S.C. Mar.12, 2009), *aff'd*, 356 F. App'x 646 (4th Cir. 2009) (finding that a company which produced hygiene products for sale to prison commissaries did not act under color of state law, and stating that "the mere act of selling something to a government entity to be distributed to inmates does not render the manufacturer or distributor state actors"); *Plummer v. Valdez,* No. 06-1119, 2006 WL 2713784, at *2 (N.D. Tex. Sept. 21, 2006) (holding that a private corporation that sold products to a jail commissary did not act under color of state law). Berry's claims against Keefe will be dismissed without prejudice on screening and leave will be granted to

---

traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999). Rather, to support a finding of state action, "the government must be 'responsible for the specific conduct of which the plaintiff complains.'" *Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

Berry to file an amended complaint if he can identify what role Keefe played in violating his constitutional rights and whether it is a state actor subject to liability under § 1983.

### B.     Official Capacity Claims

Berry asserts claims against Philadelphia Police Detective Sellers and Officers Werner and Bradley in their official as well as their individual capacities. (Compl. at 2-3.) Official capacity claims against these named Defendants are indistinguishable from claims against the entity that employs the officials, in this case the City of Philadelphia. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

To state an official capacity/municipal liability claim, a plaintiff must allege that the municipality's policies or customs caused the alleged constitutional violation. *See Monell*, 436 U.S. at 694; *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). The plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was" to satisfy the pleading standard. *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an

injury, the Defendant must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted).  In other words, "[c]ustom requires proof of knowledge and acquiescence by [a municipal] decisionmaker."[5]  *McTernan*, 564 F.3d at 658; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995) (to establish municipal liability, the plaintiffs "must show that a policymaker for the Township authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence").

To the extent Berry seeks damages from the named individual Defendants in their official capacities, he has failed to allege facts that support *Monell* liability.  Berry makes no allegations regarding a specific custom or policy by which official capacity claims may be maintained, and he fails to allege that any policy or custom of the City caused the constitutional violations he describes in his Complaint.  Accordingly, the official capacity claims against Defendants Sellers, Werner, and Bradley will be dismissed without prejudice on screening.

### C. Individual Capacity Claims

The remaining allegations in Berry's Complaint pertain to his January 2018 arrest, the resulting criminal charges of which he was acquitted, and his assertions that the wrongful incarceration caused him to be infected with COVID-19 in March 2020.  (Compl. at 4-5.)

#### 1. False Arrest, Wrongful Incarceration and Malicious Prosecution

Although not entirely clear, Berry appears to assert that his arrest in January 2018 resulted in a wrongful incarceration and subsequent acquittal.  (*Id.*)  "False arrest and false

---

[5] A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

7

imprisonment are 'nearly identical claims' that are 'generally analyzed together.'" *Karkut v. Target Corp.,* 453 F. Supp. 2d 874, 879 (E.D. Pa. 2006) (quoting *Brockington v. Phila.,* 354 F. Supp. 2d 563, 570 n. 8 (E.D. Pa. 2005) (citation omitted)). To state a claim for false arrest and related false imprisonment under the Fourth Amendment, a plaintiff must allege facts establishing that he was arrested without probable cause. *See Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995). "[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Id.* at 483. "False arrest and false imprisonment claims will 'necessarily fail if probable cause existed for any one of the crimes charged against the arrestee.'" *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quoting *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016)).

A plaintiff asserting a malicious prosecution claim must establish that "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009). The United States Supreme Court recently clarified with respect to the second element that a plaintiff need not "show that the criminal prosecution ended with some affirmative indication of innocence" and "need only show that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022); *see also Coello v. DiLeo*, 43 F.4th 346, 354-55 (3d Cir. 2022) ("A § 1983 claim

sounding in malicious prosecution accrues when 'the prosecution terminate[s] without a conviction.'").

Berry has not alleged facts that plausibly show probable cause was lacking when he was arrested or when any resulting criminal proceedings were initiated against him. Indeed, he has not alleged any details about the circumstances surrounding his arrest, the criminal charges issued as a result thereof, or his alleged acquittal. Consequently, his false arrest, false imprisonment, and malicious prosecution claims must be dismissed on that basis. *See, e.g., Jenkins v. City of Philadelphia*, No. 15-3271, 2015 WL 5585186, at *3 (E.D. Pa. Sept. 23, 2015) (dismissing false arrest, false imprisonment and malicious prosecution claims because plaintiff failed to plausibly allege a lack of probable cause where plaintiff, while alleging that he was twice arrested, did not have drugs in his possession, did not break the law and the police confiscated his property, "assert[ed] no other facts that would shed light on the circumstances under which he was arrested, on what the officers knew or should have known at the time of the arrest, or on any other factor that might have a bearing on the claims he attempts to raise"); *Santiago v. Humes*, No. 14-7109, 2015 WL 1422627, at *4 (E.D. Pa. Mar. 30, 2015) (dismissing false arrest, false imprisonment, and malicious prosecution claims when plaintiffs failed to "affirmatively assert facts to show that the Officer Defendants did not have probable cause" when plaintiffs simply alleged that all of the allegations against them in the underlying criminal proceedings were false).

### 2. Deliberate Indifference

Berry asserts that he was "treated inadequately" and his incarceration caused him "to be infected with [COVID]-19" in March of 2020. (Compl. at 4.) Berry further avers that, as a

9

result of the COVID-19 infection, he was transferred to ASD until April 11, 2020 "without the necessary hygiene products that [he had] purchased through commissary." (*Id.* at 4, 6.)

Berry's claims fail as pled because he does not allege how any of the named Defendants were personally involved in the alleged violation of his rights. As noted above, an individual must be personally involved in violating a plaintiff's rights to be liable under § 1983. *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs."); *see also Iqbal*, 556 U.S. at 676 (explaining that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *see also Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (concluding that the plaintiff's collective use of the word "Defendants" failed to adequately plead which specific defendant engaged in the specific conduct alleged by the plaintiff).

Berry's claims fail as pled for other reasons. To state a constitutional claim in the context of COVID-19 management, Berry must allege facts to support a plausible inference that prison officials were deliberately indifferent to his serious medical needs. *See Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020). To meet this standard, the facts alleged must reflect that the "Government knew of and disregarded an excessive risk to [his] health and safety." *Id*. at 328-29 (citing *Nicini v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)). "The context of the Government's conduct is essential to determine whether it shows the requisite deliberate indifference," and, in this context, a reviewing court must defer to the expertise of both medical officials and jail administrators, and not assume a constitutional defect where concrete action has been taken in response to the COVID-19 pandemic, as constitutional rules "are not subject to mechanical application in unfamiliar territory." *Id*. at 330 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)) (emphasis in original). Thus, where the facility has taken

concrete steps towards mitigating the medical effects of COVID-19 in a detention facility, a prisoner will fall "well short" of establishing that the facility and its staff were deliberately indifferent toward his medical needs in light of the virus, even though they cannot entirely "eliminate all risk" of contracting COVID. *Id*. at 330-31.

Berry's allegation that he was infected with COVID-19 as a result of his incarceration is conclusory and does not raise a plausible inference that Defendants disregarded an excessive risk to his health or safety. Berry's COVID-19 diagnosis alone is an insufficient basis upon which to establish a constitutional violation. *See Hope*, 972 F.3d at 330 (explaining that the Constitution does not require the government to entirely eliminate risk of contracting COVID-19 in a correctional setting, stating "[plaintiffs] argue that the Government must eliminate entirely their risk of contracting COVID-19. That task is not the constitutional standard, however").

Moreover, Berry's deliberate indifference claim based on the alleged denial of hygiene products during his time at ASD is also not plausible as pled. Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted and sentenced prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components.[6] *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id*. (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Bell v. Wolfish*, 441 U.S. 520, 538-39, 539 n.20 (1979)). In general, a prisoner must assert that prison officials acted with deliberate

---

[6] The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement, which the Fourteenth Amendment applies to pretrial detainees. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). It is not clear from the Complaint whether Berry was a pretrial detainee or convicted inmate at the time of the relevant events, so it is therefore unclear which amendment applies.

indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety.  See Wilson, 501 U.S. at 298-99; see also Wilson v. Burks, 423 F. App'x 169, 173 (3d Cir. 2011) (per curiam) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994); cf. Edwards v. Northampton Cty., 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Berry avers that he was denied hygiene products during an approximate two-week period of time while he was at ASD.  (Compl. at 4-5.)  As stated above, Berry has not tied any of these alleged deprivations to any specific Defendant.  Even if he had, Berry's general and sparse allegations that he was denied "necessary hygiene products" do not provide the Court with enough information to determine whether the alleged deprivation was sufficiently serious so as to rise to the level of a constitutional violation.  Berry does not allege how the denial of hygiene products caused a substantial risk of serious harm to his health or safety, or that any official knew of and disregarded that risk.  See, e.g., Fortune v. Hamberger, 379 F. App'x 116, 122 (3d Cir. 2010) (per curiam) (concluding that denial of showers for fifteen days did not violate Eighth Amendment when inmate did not "suffer[ ] any harm as a result of the denial of additional showers"); Thomas v. SCI Graterford, No. 11-6799, 2014 WL 550555, at *5 (E.D. Pa. Feb. 12, 2014) (concluding that denial of cleaning supplies for a two-week period was not sufficiently serious to satisfy the objective component of an Eighth Amendment claim); see also Lindsey v. Shaffer, 411 F. App'x 466, 468 (3d Cir. 2011) (per curiam) (concluding that whether plaintiff

12

suffered harm was critical to determination of whether unsanitary conditions were unconstitutional).

### IV.   CONCLUSION

As set forth more fully above, any claims Berry sought to assert against the 35th Police Department will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because they are not plausible and the defects in those claims cannot be cured.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints with leave to amend "unless amendment would be inequitable or futile.").  The remainder of Berry's Complaint will be dismissed without prejudice at this time pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  Because the Court cannot say at this time that Berry cannot cure the defects the Court has identified in his remaining claims, he will be granted an opportunity to file an amended complaint.[7]  An appropriate Order follows, which provides further instruction as to amendment.

**BY THE COURT:**

*s/ R. Barclay Surrick*
_____
**R. BARCLAY SURRICK, J.**

---

[7] A two-year statute of limitations applies to civil rights claims under 42 U.S.C. § 1983.  *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 387 (2007).  It appears from the face of the Complaint that some of the claims Berry seeks to bring may be time-barred.  However, given the sparse factual allegations, the Court will not address the timeliness of Berry's claims at this time and will, instead, permit Berry to amend his complaint so he can expound upon the facts giving rise to his claims.